UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
PETER AGATE,
*As Administrator of the Estate of Joseph Agate,*

                Plaintiff,                      **MEMORANDUM & ORDER**
                                                        04-CV-5457 (RRM)
      - against -

THE CITY OF NEW YORK, CITY OF NEW
YORK PARKS AND RECREATION, and CITY
PARKS FOUNDATION,

                Defendants.
----------------------------------------------------------X
**MAUSKOPF, United States District Judge.**

      Plaintiff Joseph Agate,[1] a Florida resident, brings this diversity action asserting claims of negligence and violations of New York State Labor Law against defendants City of New York and New York City Department of Parks and Recreation s/h/a City of New York Parks and Recreation (together, the "City").[2] Plaintiff alleges severe injury resulting from being struck by a metal pole that fell as he worked to dismantle a Ferris wheel on City property in Queens, New York. Plaintiff alleges that this pole fell because it was improperly secured, and that the failure to properly secure the pole constituted negligence and also violated New York State Labor Law § 200 and § 240(1). Plaintiff brings an additional claim under New York State Labor Law § 241(6), which he claims was violated because he was not provided with a safety hat.

      Plaintiff moved for summary judgment as to his § 240(1) and § 241(6) claims on April 17, 2008; on April 18, 2008, defendants moved for summary judgment as to all claims, including

---

[1] On November 13, 2008, Plaintiff Joseph Agate passed away. On August 20, 2009, pursuant to Fed. R. Civ. P. 25, this Court substituted as Plaintiff Joseph Agate's brother, Peter Agate, the Administrator of his estate. For purposes of this Order, the Court will continue to refer to Joseph Agate as Plaintiff.

[2] Defendant City Parks Foundation was voluntarily dismissed from this action on February 21, 2006.

those brought pursuant to Labor Law § 200 and common law negligence. For the reasons set forth below, plaintiff's motion for summary judgment as to the § 240(1) and § 241(6) claims is GRANTED, and defendants' motion as to all claims is DENIED.

## FACTS

The following facts are undisputed.[3]

### A. Background

On May 17, 2004, plaintiff, a Florida resident, was employed as a full-time employee by Lawrence J. Carr Amusements Co., Inc. ("Carr"). Carr, a Florida corporation, was in the carnival entertainment business and contracted with, among others, local municipalities such as the City of New York for that purpose. Plaintiff worked for Carr as a welder, assembler, dismantler, and repair person of amusement park rides and games. Plaintiff's duties included working on the assembly and disassembly of an eighty-five foot tall Ferris wheel, which was one of the amusement park rides offered by Carr.

On or about May 5, 2004, Carr contracted with the City to hold a carnival at Baisley Park Pond in Queens, New York from May 7, 2004 through May 16, 2004. (See Temporary Use Authorization, dated Apr. 17, 2008 (attached as Ex. I to the Declaration of Steven G. Schiesel, Esq. (Docket No. 34)).) Baisley Park Pond is New York City property operated by the Parks Department as a public park.

---

[3] Notably, the Court cannot locate any statement pursuant to Local Rule 56.1 filed by defendants in support of their motion for summary judgment. Defendants were required under the Local Rules to submit such a statement; however, given that a Local Rule 56.1 statement was filed in support of *plaintiff's* motion for summary judgment, to which defendants responded, this Court will proceed on the basis of the facts admitted to be undisputed in those papers, as well as on all exhibits submitted by both parties in connection with both motions.

Plaintiff arrived at Baisley Pond Park on May 4, 2004 to participate in the assembly and erection of various carnival rides and in other preparations. Plaintiff, along with a Carr supervisor, another Carr employee, and three day-laborers hired by Carr for this carnival, assembled the Ferris wheel, a process that took approximately thirty-five hours. Following the end of the carnival on May 16, 2004, at 10 p.m., that same team began the process of disassembling the Ferris wheel.[4]

### B. The accident

The dismantling of the Ferris wheel began at 10 p.m. on May 16, 2004 and continued into May 17, 2004. To dismantle the Ferris wheel, plaintiff and his co-workers first removed the tubs (the cars where patrons would sit) from the large steel poles that secured the tubs to the spokes of the Ferris wheel. After a tub was removed, the corresponding steel pole would be removed and pushed up and into the spoke, which was hollow, where it would be secured by means of a steel pin that was inserted through a set of aligned holes in the spoke and pole.

One of plaintiff's tasks was to push the steel pole up and into the spoke using a large rod, following which one of the day-laborers would then secure the pole to the spoke with a steel pin. Although weights and measurements were not provided on the record, neither party disputes that the poles are of considerable size and weight, and are made of thick-gauged galvanized steel. Plaintiff was injured when one of the steel poles dislodged from the spoke and fell approximately sixteen feet, striking plaintiff in the head. It is undisputed that the pole fell solely because the

---

[4] During the assembly of the Ferris wheel, inspectors from the City of New York were present, although the purpose of their presence is disputed. Whether or not inspectors were present during the subsequent dismantling of the wheel is also the subject of dispute.

day-laborer did not properly secure the pole to the spoke with the pin, thereby allowing the pole to dislodge from the spoke and fall onto plaintiff. It is also undisputed that, had the steel pin been properly inserted, the accident would not have occurred. It is further undisputed that Carr failed to provide safety equipment, including safety hats, at the job site. Following this accident, plaintiff did not return to work.

### C. *Procedural history*

Plaintiff commenced this action on December 16, 2004 against the City of New York, City of New York Parks and Recreation, and City Parks Foundation. A notice of claim was served on July 13, 2004 and July 14, 2004, and a hearing pursuant to N.Y. Gen. Mun. Law § 50-h was conducted on November 3, 2004. Defendants answered the complaint on April 21, 2005, and on June 20, 2005 commenced a third-party action against Carr claiming indemnification and contribution. The third-party complaint was withdrawn on or about September 1, 2005 when Carr assumed the indemnity and defense of the instant action. All claims against City Parks Foundation were voluntarily discontinued by plaintiff. The instant motions for summary judgment were served on April 17 and April 18, 2008 by plaintiff and defendants, respectively. The fully briefed motions were submitted to this Court on July 11, 2008. The resolution of those motions were held in abeyance as a result of Plaintiff's death, pending the substitution of a successor or representative, which was granted by this Court on August 20, 2009.

# DISCUSSION

## I. Standard of review

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there "is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)); see also Brosseau v. Haugen, 543 U.S. 194, 195 n.1 (2004). To defeat summary judgment once the moving party has carried its burden under Rule 56(c), "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (collecting cases). "[A]ll that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." McClellan v. Smith, 439 F.3d 137, 144 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968)). However, where "the nonmoving

5

party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (quoting Celotex, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247–48).

In this diversity action, New York State's substantive law applies. Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996) ("Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").

## II. Analysis of plaintiff's claims

Plaintiff brings claims under three separate provisions of the New York Labor Code: Section 240(1), Section 240(6), and Section 200, as well as a claim for common law negligence. Plaintiff has moved for summary judgment as to the Section 240(1) and Section 240(6) claims, but not the Section 200 or common law negligence claims. Defendants have moved for summary judgment on all four of plaintiff's claims. The resolution of these motions essentially turns on whether the dismantling of the Ferris wheel comes within the scope of the relevant Labor Law provisions.

### a. Section 240(1) of the New York State Labor Law

Section 240(1) of the New York State Labor Law provides in relevant part that:

All contractors and owners and their agents, . . . in the erection, *demolition*, repairing, *altering*, . . . of a building or *structure* shall furnish or erect, or cause to

6

be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

N.Y. Labor Law § 240(1) (emphasis added). Liability under § 240(1) "has two elements: a statutory violation and proximate cause." Starkey v. Capstone Enters. of Porchester, No. 06-CV-1196, 2008 U.S. Dist. LEXIS 76882, at *12 (S.D.N.Y. Sept. 29, 2008) (citing Blake v. Neighborhood Hous. Servs. of New York City, Inc., 803 N.E.2d 757, 761 (N.Y. 2003)); Panek v. County of Albany, 788 N.E.2d 616, 619–20 (N.Y. 2003)). Labor Law § 240(1) was enacted to protect workers by "impos[ing] the responsibility for safety practices on those best situated to bear that responsibility," Ross v. Curtis-Palmer Hydro-Elec. Co., 618 N.E.2d 82, 85 (N.Y. 1993), namely, "contractors and owners and their agents," N.Y. Labor Law § 240(1). Labor Law § 240(1) "is to be construed as liberally as may be for the accomplishment of the purpose for which it was . . . framed." Narducci v. Manhasset Bay Assocs., 750 N.E. 2d 1085, 1089 (N.Y. 2001) (quoting Koenig v. Patrick Constr. Corp., 83 N.E.2d 133, 135 (N.Y. 1948)). In order to recover, a plaintiff must nevertheless show that he was injured due to the type of hazard against which the statute is intended to protect. Id. (citing Rocovich v. Consol. Edison Co., 583 N.E.2d 932, 934 (N.Y. 1991)).

New York courts have held that the statute "applies to both 'falling worker' and 'falling object' cases," id., and that "[w]ith respect to falling objects, Labor Law § 240(1) applies where the falling of an object is related to 'a significant risk inherent in . . . the relative elevation . . . at which materials or loads must be positioned or secured.'" Id. (quoting Rocovich, 583 N.E.2d at 934). Specifically, "a plaintiff must show that the object fell, while being hoisted or secured,

7

*because of* the absence or inadequacy of a safety device of the kind enumerated in the statute."
Id. Where the plaintiff has met this burden, § 240(1) imposes absolute liability on owners or contractors, "regardless of whether they exercise supervision or control over the work." Blake, 803 N.E.2d at 761.

Here, it is undisputed that plaintiff was injured when a steel pole that had been detached from a Ferris wheel spoke fell from a height of approximately sixteen feet and hit him on the head. Plaintiff argues that the pole was in the process of being secured to the Ferris wheel, that the absence or inadequacy of a securing device caused the pole to fall, and that therefore this is the paradigmatic case of injury sought to be prevented by § 240(1); defendants argue in response that the pole that fell "was not being hoisted nor did it require securing," (Defs.' Opp'n at 5), that the Ferris wheel being dismantled does not constitute a "structure" as defined by § 240(1),( id. at 9), and that plaintiff was not engaged in a covered activity under § 240(1), e.g., either alteration or demolition of the Ferris wheel, (id.). Each of these points in opposition can be disposed of as a matter of law.[5]

### i. The steel pole that struck plaintiff was required to be secured

First, defendants argue that the steel pole did not need to be secured to the Ferris wheel, and so this accident cannot come within the scope of § 240(1), which is targeted at injuries resulting from, *inter alia*, objects that fall from a height while being hoisted or secured due to the absence or inadequacy of a safety device of the type enumerated in the statute. See Narducci,

---

[5] For purposes of this discussion, this Court refers to the papers submitted on plaintiff's motion for summary judgment, but notes that many of the arguments discussed here were also addressed in the papers submitted on defendants' motion for summary judgment. Essentially the same issues were raised in each set of papers.

8

750 N.E.2d at 1089. As an initial matter, defendants fail to establish a genuine issue of material fact because they did not controvert those paragraphs of plaintiff's statement submitted pursuant to Local Rule 56.1 setting forth that the pole was not properly secured to the spoke because the securing device, a steel pin, was not properly inserted or failed. (See Pls.' Local Civ. R. 56.1 Stmt. ¶¶ 70–71.) Under the Local Rules, such a failure to controvert an asserted undisputed material fact results in that fact being deemed admitted. See Local Civ. R. 56.1. Even assuming that defendants had controverted whether the pole was required to be secured, they have failed to offer any admissible evidence in support of that position; to the contrary, the record evidence establishes both that that the steel poles at issue were intended to be secured to the Ferris wheel spokes by means of a steel pin (clearly a securing device within the scope of the statute), and that the failure to adequately secure the pole in the instant case led to plaintiff's injury. The cases cited by defendants in their opposition are not on point because they deal with situations where, for example, the falling object was deliberately dropped, see, e.g., Roberts v. Gen. Elec. Co., 768 N.E.2d 1127, at 1128 (N.Y. 2002), or where the injury was caused by an object that fell for some reason other than the failure or inadequacy of a securing device, see, e.g., Narducci, 750 N.E.2d at 1090.

### ii. The Ferris wheel is a "structure" as defined by § 240(1), and the plaintiff was involved in demolition or alteration of that structure

The New York Court of Appeals has defined a structure under § 240(1) as "any production or piece of work artificially built up or composed of parts joined together in some definite manner." Joblon v. Solow, 695 N.E.2d 237, 241 (N.Y. 1998). Structures such as airplanes, Garcia v. Delta Airlines, No. 98 Civ. 7259, 2001 U.S. Dist. LEXIS 621 (E.D.N.Y. Jan.

23, 2001), tents, Faldetta v. State, 801 N.Y.S.2d 233 (N.Y. Ct. Cl. 2005), and telephone poles, Lewis-Moors v. Contel of New York, 578 N.E.2d 434 (N.Y. 1991), have been held to be structures within the scope of § 240(1). Here, the uncontroverted evidence establishes that Ferris wheel at issue is approximately eighty-five feet in height and took approximately thirty-five hours to assemble or disassemble. The Ferris wheel consisted of a hub, spokes, steel poles, and tubs containing seats for carnival-goers. Under Joblon, the Ferris wheel is clearly a structure as defined by § 240(1). See 695 N.E.2d at 241. None of the cases relied upon by defendants are to the contrary, as they address structures much less complicated and substantial than the Ferris wheel here at issue, such as a temporary canopy, a temporary movie set, or a temporary paper backdrop. (See Defs.' Opp'n at 9 (collecting cases).)

Defendants also argue that plaintiff's work on the disassembly of the Ferris wheel does not constitute either demolition or altering of a structure, as defined by § 240(1). (Id.) Defendants' argument is based on the misapprehension that structures that are regularly assembled and disassembled do not come within the scope of the statute, and that instead such work should be classified as "routine maintenance," one of the exceptions to §240(1) liability recognized by New York courts. See, e.g., Pound v. A.V.R. Realty Corp., 706 N.Y.S.2d 886 (N.Y. App. Div. 2000). No reasonable reading of the case law can support such a conclusion. Alteration under § 240(1) has been defined as "making a *significant* physical change to the configuration or composition of the building or structure," and this is the case even where such alteration occurs off of a typical construction site. Joblon, 695 N.E.2d at 241; see also Sanatass v. Consol. Inv. Co., 887 N.E. 2d 1125, 1127 (N.Y. 2008) (clarifying the distinction between

alteration and routine maintenance activities). Demolition has been held to include dismantling or disassembling a structure. See, e.g., Sinzieri v. Expositions, Inc., 704 N.Y.S.2d 293, 294 (N.Y. App. Div. 2000) (holding that disassembly of a temporary exhibit at an expo was demolition under § 240(1)); Faldetta, 801 N.Y.S.2d 233 (citing 12 N.Y. Comp. Codes R. & Regs. § 23-1.4(b)(16) (defining demolition work to include the "total or partial dismantling . . . of a building or other structure including the removing or dismantling of machinery or other equipment")).

Here an eighty-five foot tall Ferris wheel was being disassembled by removing many of its constituent parts and making significant physical changes to the configuration of the remainder. This Court holds as a matter of law that the disassembly of a complex structure such as the Ferris wheel here at issue falls within the scope of § 240(1), whether such disassembly be characterized as alteration or demolition of the Ferris wheel. Defendants have offered no admissible evidence suggesting otherwise. Accordingly, plaintiff has shown that he was injured by a falling object that fell due to its being inadequately secured, and that this happened while he was engaged in altering or demolishing a structure as defined by § 240(1).

### b. Section 241(6) of the New York State Labor Law

Labor Law § 241(6) requires that:

> All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work . . . shall comply therewith.

N.Y. Labor Law § 241(6). The New York Court of Appeals has explained that the statute is, "in a sense, a hybrid." Morris v. Pavarini Constr., 874 N.E.2d 723, 725 (N.Y. 2007). "Its first sentence merely reiterates common-law standards of care, and thus cannot be a basis for civil liability by persons who are not themselves negligent; the first sentence 'cannot by itself be relied upon as the source of an owner's or general contractor's nondelegable duty.'" Id. at 725–26 (quoting Ross, 618 N.E.2d at 88). "The second sentence, however, requiring owners and contractors to comply with rules of the Commissioner of Labor, does create a nondelegable duty—but only where the regulation in question contains a 'specific, positive command[][,]' [Allen v. Cloutier Constr. Corp., 376 N.E.2d 1276, 1278 (N.Y. 1978),] not where the regulation itself, using terms like 'adequate,' 'effective,' 'proper,' 'safe,' or 'suitable,' merely incorporates 'the ordinary tort duty of care[,]' [Ross, 618 N.E.2d at 88]." Morris, 874 N.E.2d at 725–26.

In order to recover, therefore, a plaintiff must show "that a specific regulation of the Industrial Code was violated, that the regulation applied to the incident at issue and that the violation proximately caused his injuries." Hotaling v. Corning Inc., 784 N.Y.S.2d 802, 803 (N.Y. App. Div. 2004); see also Simon v. Schenectady N. Congregation of Jehovah's Witnesses, 522 N.Y.S.2d 343, 346 (N.Y. App. Div. 1987). The particular Industrial Code provision violated must "set forth a specific standard of conduct." Wilson v. City of New York, 89 F.3d 32, 38 (2d Cir. 1996). Because the duty to comply with the Commissioner's regulations under § 241(6) is nondelegable, where a plaintiff has asserted a viable claim under this provision "he need not

show that defendants exercised supervision or control over his worksite in order to establish his right of recovery." Ross, 618 N.E.2d at 86.[6]

Plaintiff relies on 12 N.Y. Comp. Code R. & Regs. § 23-1.8(c)(1) to delineate the duty allegedly violated by defendants here. This provision provides that:

> **(c) Protective apparel. (1) Head protection.** Every person required to work or pass within any area where there is a danger of being struck by falling objects or materials or where the hazard of head bumping exists shall be provided with and shall be required to wear an approved safety hat. Such safety hats shall be provided with liners during work in areas or at such times where the temperature is below 55 degrees Fahrenheit.

12 N.Y. Comp. Code R. & Regs. § 23-1.8(c)(1). In Singh v. 106–108 Bayard St., 750 N.Y.S.2d 496 (N.Y. App. Div. 2002), the Appellate Division, First Department held that this provision was "sufficiently concrete and specific in its mandate to support plaintiff's Labor Law § 241(6) claim." Id. at 496. Here, it is undisputed that plaintiff was not provided with a safety hat or any other safety equipment. Defendants argued in their motion for summary judgment only that plaintiff was involved in routine maintenance, and therefore did not come within the ambit of the statute. (Defs.' Mot. S.J. at 14.) This argument has already been disposed of. See also Joblon, 695 N.E.2d at 242 ("Having concluded that [plaintiff] was engaged in 'altering' under Labor Law § 240(1) at the time of his injury, we likewise determine that the facts presented could support a claim under Labor Law § 241(6) . . . ."). Defendants also argue that plaintiff has failed

---

[6] Ross also notes two important differences between liability under § 240(1) and § 241(6): first, that contributory and comparative negligence are valid defenses to claims asserted under the latter section, and second, that a breach of a duty imposed by a regulation promulgated under § 241(6) is only some evidence of negligence, and does not lead to "absolute" liability of the sort imposed under § 240(1). 618 N.E.2d at 86. Here, however, defendants have not asserted the defenses of contributory or comparative negligence, nor have they offered any admissible evidence tending to show that they were not negligent should this Court find a violation of any applicable Industrial Code provision.

to identify a specific code section that was violated, but, while plaintiff did not identify the relevant section in his complaint, he did in his moving and responding papers on summary judgment, which is sufficient under the Federal Rules. See Fed. R. Civ. P. 8 (a)(2), (e); cf. Simon, 522 N.Y.S.2d at 346 (finding that plaintiff had failed to identify a specific code provision alleged to be violated where "nowhere in plaintiff's pleadings or submissions on the motion or this appeal d[id] he make reference to any of the regulations adopted pursuant to Labor Law § 241(6)").

In their opposition to plaintiff's motion for summary judgment, defendants argued for the first time that the statute did not apply because there was no "danger of being struck by falling objects" at the worksite. (Defs.' Opp'n at 14.) However, defendants offered no admissible evidence in support of this assertion, and the record establishes, to the contrary, that there was, in fact, a danger of being struck by falling objects, as evidenced by plaintiff's injury here. Where plaintiff was working below an eighty-five foot structure in the process of being disassembled, the danger of falling objects is obvious.

### c. Section 200 of the New York State Labor Law and negligence

"Courts generally analyze claims brought under both § 200 and the common law [of negligence] simultaneously." Wojcik v. 42nd St. Dev. Project, Inc., 386 F. Supp. 2d 442, 455 n.15 (S.D.N.Y. 2005). "Simultaneous analysis is particularly appropriate where similar facts and theories underlie a plaintiff's section 200 and negligence claims." Ambrosi v. 1085 Park Ave. LLC, No. 06-CV-8163, 2008 U.S. Dist. LEXIS 73930, at *28 (S.D. N.Y. Sept. 25, 2008). Here, plaintiff's § 200 and common law negligence claims are premised on the same facts and theories.

Section 200(1) of the New York State Labor Law states in relevant part:

> All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons.

N.Y. Labor Law § 200(1). Section 200(1) "codifies landowners' and general contractors' common-law duty to maintain a safe workplace." Ross, 618 N.E.2d at 88. To recover, however, plaintiff must show that "the party to be charged exercised some supervisory control over the operation." Id. "Mere presence of employees . . . at the work site" has been held insufficient to dictate liability under § 200. Ross v. Curtis-Palmer Hydro-Elec. Co., 743 N.Y.S.2d 630, 631 (N.Y. App. Div. 2002). Liability also requires that a defendant have "actual or constructive notice of the condition complained of," namely, the inadequate securing devices and the absence of safety hats. See Wilson, 89 F.3d at 38.

Here, there is a genuine issue of material fact as to plaintiff's § 200 and common law negligence claims because plaintiff has offered admissible evidence suggesting that defendants did have inspectors at the worksite, and also offered evidence to suggest that these inspectors were aware of at least some of the alleged safety issues. Together with the contract between Carr and defendants, this evidence, while insufficient to justify holding defendants liable under § 200 or the common law of negligence at this stage, does serve to create a triable issue of fact for the jury. Therefore, while there remain significant questions as to whether plaintiff can demonstrate that defendants exerted supervisory control over the disassembly of the Ferris wheel, defendants'

motion for summary judgment dismissing plaintiff's §200 and common law negligence claims is denied.

## CONCLUSION

For the foregoing reasons, it is ORDERED that plaintiff's motion for summary judgment as to his Section 240(1) and Section 241(6) claims is GRANTED. For the same reasons, defendants' motion for summary judgment as to plaintiff's Section 240(1), Section 241(6), Section 200, and common law negligence claims is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
      September 29, 2009

_____
ROSLYNN R. MAUSKOPF
United States District Judge